```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                          CHARLESTON
```

**GEORGE L. THOMPSON,**

    **Plaintiff,**

**v.**                                              **CASE NO. 2:04-cv-00855**

**JO ANNE BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**


## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the court on cross-motions for judgment on the pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, George L. Thompson (hereinafter referred to as "Claimant"), filed an application for DIB on August 19, 2002, alleging disability as of June 10, 2002, due to emphysema, pneumoconiosis, hearing loss, right thumb injury, left elbow pain and anxiety and depression. (Tr. at 74-78, 97, 138.) The claim was denied initially and upon reconsideration. (Tr. at 55-59, 62-64.) On April 15, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 65.) The hearing was

held on September 4, 2003, before the Honorable Theodore Burock. (Tr. at 435-60.)  By decision dated December 16, 2003, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 18-30.)  Claimant submitted new evidence to the Appeals Council, but the Appeals Council determined on July 15, 2004, that the new evidence did not provide a basis for changing the ALJ's decision.  (Tr. at 6-9.)  On August 12, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2003).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2003). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffers

3

from the severe impairments of bilateral high frequency sensorineural hearing loss, chronic obstructive pulmonary disease, occupational pneumoconiosis, status-post left elbow strain with post-traumatic arthritis, degenerative joint disease of the right shoulder, arthritis of the hands, status-post multiple trauma, status-post comminuted fracture of the right thumb with internal fixation, lumbosacral disc disease, status-post repeated strain and anxiety and depression.  (Tr. at 19.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 19.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 20.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 27.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as door keeper and rental clerk, which exist in significant numbers in the national economy.  (Tr. at 28.)  On this basis, benefits were denied.  (Tr. at 28.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less

> than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was fifty-two years old at the time of the administrative hearing. (Tr. at 440.) Claimant completed the ninth grade and obtained his GED. (Tr. at 442.) In the past, he worked in the coal mines, as an EMT and as a school bus driver. (Tr. at 453, 455.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to include all of Claimant's mental limitations in his residual functional capacity finding and hypothetical question to the vocational expert; (2) the ALJ erred in the weight afforded the opinion of Johnny Dy, M.D.; and (3) the ALJ failed to consider Claimant's impairments in combination. (Pl.'s Br. at 10- 12.)

The Commissioner argues that (1) the ALJ's hypothetical question properly set forth Claimant's mental limitations; (2) the ALJ properly evaluated the opinion of Dr. Dy; and (3) the ALJ properly considered Claimant's impairments in combination. (Def.'s Br. at 11-19.)

Claimant first argues that the ALJ failed to include all of Claimant's mental limitations in the hypothetical question to the vocational expert. In particular, Claimant argues that the ALJ should have included limitations related to attention and concentration in the hypothetical question. Claimant relies on a consultative mental examination on March 4, 2003, in which Claimant's attention and concentration was moderately deficient and a Mental Residual Functional Capacity Assessment by a nonexamining State agency source on March 29, 2003, that included a finding that Claimant is limited in his ability to maintain attention and concentration for extended periods of time. (Pl.'s Br. at 10-11.)

6

In his decision, the ALJ determined that Claimant suffered from the severe mental impairments of anxiety and depression. (Tr. at 19.) The ALJ noted Claimant's allegations of low energy, loss of self-esteem, feelings of hopelessness, uncontrolled worry, apprehension, shakiness, crying spells, impaired recent memory and impaired ability to concentrate. The ALJ acknowledged the report of Scott Spaulding, M.A., who conducted a consultative mental examination on March 4, 2003, at the request of the State disability determination service. (Tr. at 19, 297-301.)

Mr. Spaulding found that Claimant's attention and concentration were "moderately deficient" because Claimant made two mistakes on serial 3's. Claimant was able to recite the days of the week forward and backward without difficulty. (Tr. at 300.) Claimant reported no recent mental health treatment. (Tr. at 299.) Mr. Spaulding diagnosed general anxiety disorder and depressive disorder on Axis I and made no Axis II diagnosis. (Tr. at 300.) On July 2, 2003, Mr. Spauldig completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which he opined that Claimant had a poor ability to maintain attention and concentration and understand, remember and carry out complex job instructions, but fair to good abilities in all other areas. (Tr. at 381-83.)

The ALJ explained in his decision that he accepted Mr. Spaulding's opinions, including his opinions on the Medical

Assessment of Ability to do Work-Related Activities (Mental), but further stated that the conclusions therein are

> substantially based on the claimant's self-reports and minimally supported by their own clinical findings. The assessment of moderately impaired concentration rests on the claimant's having made two mistakes doing serial calculations "by three's", an exercise which is liable to subjective bias. At the same time, the claimant was able to repeat the days of the week forward and backward without difficulty. The mental status evaluation showed no disturbance of mood, affect, speech, thought or thought processing, or psychomotor behavior and no deficits of insight, judgment, or immediate, delayed or remote memory. The claimant has no medical history of treatment for psychological symptoms or referral for mental health evaluation. The claimant was prescribed Wellbrutin [sic] to help him stop smoking.

(Tr. at 26.)

The ALJ further explained that he adopted "the opinions of the state agency psychological consultant, which are well supported by the medical and other evidence of record and adequately consider the claimant's subjective complaints (Exhibit 22F and 23F). The evidence received into the record after the state agency assessment does not provide any new or material information that would challenge it." (Tr. at 26.) H. Hoback Clark, M.D., a State agency medical source, completed a Mental Residual Functional Capacity Assessment on March 29, 2003, and opined that Claimant was moderately limited in the ability to maintain attention and concentration, but otherwise had no significant limitations. (Tr. at 311-12.) Dr. Clark opined that Claimant had some limitation in concentration, but that Claimant was able to perform work like

activities. (Tr. at 313.) On a Psychiatric Review Technique form completed on the same date, Dr. Clark opined that Claimant had mild restrictions of activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration or pace and no episodes of decompensation. (Tr. at 325.)

In his decision, the ALJ determined that Claimant was minimally limited in activities of daily living, mildly limited in maintaining social functioning, not more than moderately limited in maintaining concentration, persistence and pace and had no episodes of decompensation. (Tr. at 26-27.) In his residual functional capacity finding and hypothetical question to the vocational expert, the ALJ limited Claimant to unskilled work involving "routine repetitive tasks." (Tr. at 20, 458.) In response to a hypothetical question including these and other limitations, the vocational expert identified a significant number of jobs, including rental clerk and door keeper. (Tr. at 458.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study

9

the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The court finds that the ALJ's residual functional capacity finding related to Claimant's mental impairments and the limitations included in the hypothetical question are supported by substantial evidence of record. The ALJ was not obligated to include the specific findings by Dr. Clark and Mr. Spaulding about Claimant's limitations in the ability to concentrate and maintain attention. Instead, the limitations of a need for unskilled work involving only routine, repetitive tasks adequately describe any limitations in attention and concentration. Notably, Claimant had received no recent mental health treatment, had not been referred for such treatment and took no medication for his mental impairments. As the ALJ indicated in his decision, Mr. Spaulding's objective findings were minimal. Furthermore, the State agency medical source, Dr. Clark, opined that Claimant was capable of performing work like activities. (Tr. at 313.) Given such facts,

the mental limitations included in the hypothetical question more than accommodate any limitation in attention and concentration.

Next, Claimant argues that the ALJ erred in rejecting the opinion of Dr. Dy. Dr. Dy opined that Claimant was limited to sedentary work and, Claimant points out that under the Medical-Vocational Guidelines, Rule 201.14, Claimant would be disabled if he were limited to sedentary work. (Pl.'s Br. at 11.) Claimant argues that when his impairments are considered in combination, he is capable of no more than sedentary work, and, as such, should have been found disabled. (Pl.'s Br. at 12-13.)

Dr. Dy conducted a consultative evaluation of Claimant on May 12, 2003. Dr. Dy concluded that Claimant had status post fracture of his right thumb with post-traumatic arthritis. (Tr. at 385.) Dr. Dy examined Claimant again on May 29, 2003, and concluded that Claimant had recurrent low back strain with degenerative disc disease, chronic occupational pneumoconiosis, bilateral sensorineural hearing loss and a variety of other impairments. (Tr. at 387.) Dr. Dy opined that Claimant was "totally and permanently disabled to resume his previous occupation. The combination of his multiple impairments would limit him mainly to sedentary activities." (Tr. at 388.) Dr. Dy completed a Residual Functional Capacity Assessment on which he opined that Claimant was capable of light exertional work, reduced by an ability to stand and/or walk at least two hours in an eight-hour workday, sit six

11

hours in an eight-hour workday, that Claimant's ability to push and/or pull was limited in the lower extremities, that Claimant could never climb and could occasionally balance, stoop, kneel, crouch and crawl, that Claimant was limited in reaching in all directions with the right extremity, that Claimant's hearing was limited and that Claimant should avoid all exposure to hazards. (Tr. at 389-96.)

In his decision, the ALJ acknowledged the evidence of record from Dr. Dy. (Tr. at 22, 25.) The ALJ explained the weight afforded Dr. Dy's opinion as follows:

> Although Dr. Dy examined the claimant twice, one examination focused on the claimant's hands and right thumb. The clinical findings revealed by the second examination do not support the claimant's inability to stand and/or walk more than two hours during an ordinary workday. The claimant did not exhibit any sensory, deep tendon reflex, or motor deficits in the lower extremities. The claimant was able to "walk well normally." The claimant complained of pain with lumbosacral movement, which Dr. Dy opined would not preclude the claimant's performing postural activities occasionally. Dr. Dy did not observe any significant signs of respiratory limitation. The claimant's lungs had some distant breath sounds, but they were free of rales. The claimant coughed intermittently during the examination. Not being a treating physician, Dr. Dy could only relate the claimant's report that he uses a rescue inhaler twice daily and had not done any strenuous work in [a] year. In the residual functional capacity assessment, the only physical findings that Dr. Dy cited were chronic low back strain and degenerative disc disease of the spine. The Undersigned notes that Dr. Dy is board-certified in neurology and psychiatry and specializes in neurology, which does not particularly recommend his assessment of the claimant's respiratory and orthopedic problems. The undersigned concludes that there is no medical or other evidence that refutes the claimant's ability to stand/and or walk at least six

>    hours during an eight-hour day.  The claimant testified
>    that he has approximately three bad days a week, during
>    which he "lies around" and watches television.  The
>    claimant does not report having to lie regularly down to
>    alleviate pain and fatigue.
>
>    A limited ability to reach with his upper extremity,
>    which Dr. Dy identified, is substantiated by x-ray
>    findings and clinical findings, which are consistent with
>    the claimant's recent history of treatment for right
>    shoulder pain.  In fact, the undersigned concludes that
>    the claimant is reasonably limited in both extremities
>    due to residual symptoms in his left elbow and hand.

(Tr. at 25.)

The ALJ's explanation as to the weight afforded the opinion of Dr. Dy reveals that he considered Dr. Dy's opinion in keeping with the applicable regulation, which requires that every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d) (2003).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 404.1527(d)(2).

As the ALJ explained in his decision, Dr. Dy had no treating relationship with the Claimant.  Furthermore, the ALJ noted that Dr. Dy was a specialist in neurology, not orthopedics or pulmonology.  Finally, as the ALJ indicated in his decision, there

13

is no other objective evidence indicating that Claimant cannot stand and/or walk at least six hours during an eight-hour workday. The ALJ's findings are supported by substantial evidence and in compliance with the applicable regulation.

Finally, the court finds that the ALJ adequately considered Claimant's impairments alone and in combination. 20 C.F.R. § 404.1523 (2003). The ALJ's residual functional capacity finding and the hypothetical question to the vocational expert provide every indication that the ALJ fully complied with his duty to consider Claimant's impairments and their resulting limitations in combination.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is DENIED, Defendant's Motion for Judgment on the Pleadings is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to provide copies of this Order to all counsel of record.

ENTER: September 20, 2005

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge